**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELE MARIE YOST, | ) | CASE NO. 1:23-CV-00699-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I. Introduction

Plaintiff, Michele Marie Yost ("Yost" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On March 2, 2021, Claimant filed applications for DIB and SSI, alleging a disability onset date of July 31, 2019. The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 180, Tr. at 153). On July 20, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 73-99). On August 19, 2022, the ALJ issued a written decision finding Claimant was not disabled. (ECF

1

No. 7, PageID #: 48-72, Tr. at 21-45). The ALJ's decision became final on February 7, 2023, when the Appeals Council declined further review. (ECF No. 7, PageID #: 32, Tr. at 5).

On April 4, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8 and 11). Claimant asserts the following assignments of error:

1. The ALJ erred at Step Two of the Sequential Evaluation when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments when forming the RFC.

2. The ALJ found at Step Four of the Sequential Evaluation that Plaintiff had the residual functional capacity for work at the medium level of exertion. This finding lacks substantial evidence as the ALJ improperly failed to give more weight to the medical sources who had examined Plaintiff.

3. The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of all Plaintiff's symptoms precluded her from performing substantial gainful activity at the medium level of exertion on a full-time and sustained basis.

(ECF No. 8 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

The claimant reported being unable to engage in work activity due to a combination of her physical and mental conditions (Exhibit 2E). The claimant testified that she is unable to work due to an ability to stand or walk for too long, hand and arm difficulties, lower back and hip pain, pain in her neck and shoulders, and right leg and feet pain. The claimant indicated she has aches and pains in her hands associated with arthritis, experiences hand cramping, and has pain when she bends her elbows. She reported itching and joint pain related to psoriasis and endorsed some headache side effects from prior medication but none currently on Otezla. She stated she has difficulty with sleep due to tossing and turning. The claimant indicated she attends chiropractic therapy, attended two sessions of physical therapy, does home exercises, and has had a history of injections in her hips. The claimant specified she experiences improvement for three to four months with her injections and temporary relief for a day or two with

2

her chiropractic therapy. The claimant reported she has two inhalers and a breathing machine for her respiratory issues and is unable to be outdoors when it is hot due to breathing problems. The claimant noted that she is also treated for anxiety and depression, in the form of medication management, which she noted helps her conditions.

The claimant testified that she lived with her son's father and her 12-year-old son, maintains a driver's license, and has pain with driving, receives medical assistance, and noted being able to work part time during the period at issue. The claimant indicated she can shower and dress, uses a shower chair, and occasionally needs to rest before getting dressed. The claimant stated she takes longer to prepare food due to shortness of breath and hand cramps, is able to shop albeit quickly going in and coming out. During a typical day, the claimant noted she sleeps most of the time, will feed her son, can drive herself to appointments, is able to drive her son to extracurricular functions when he engages in such activities, but otherwise lays around a lot. The claimant indicated she can stand for 10-20 minutes before having to sit down, can sit for approximately 20-30 minutes, and can lift 20-30 pounds comfortably but not continuously. She reported difficulty with getting up from kneeling, uses a non-prescribed cane when she is out for an extended period.

(ECF No. 7, PageID #: 58-9, Tr. at 31-2).

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

Review of the record reveals generally a generally limited and conservative treatment history. Xray imaging of the lumbosacral spine on July 14, 2020, showed mild s-shaped scoliosis, mild lumbar discogenic in facet joint degenerative change diffusely (Exhibit 4F).

Notes in April 2021 showed the claimant reporting shortness of breath with exertion such that she was unable to finish grocery shopping, with notes that the claimant had COVID the prior month (Exhibit 14F, page 6). Physical examination noted lungs were clear to auscultation, respirations were non-labored, with a normal gait, and 98% oxygen saturation on room air (Exhibit 14F, page 9). The claimant was referred for cardiology evaluation, with additional imaging and pulmonary function testing ordered (Exhibit 14F, pages 9-10). Imaging of the lungs on April 30, 2021, revealed mild upper lobe predominant emphysema and incidentally detected hepatic steatosis (Exhibit 13F). Follow up in May 2021, showed the claimant advised to update labs while prior testing was pending and/or undergoing review (Exhibit 14F, page 3).

Primary care notes in June 2021, showed continued report of dyspnea on exertion, with pulmonary function testing non-revealing, and smoking cessation advised

3

(Exhibit 16F, page 13). Pulmonary examination however revealed no respiratory distress (Exhibit 16F, page 16). Follow up notes in July 2021 reflected deconditioning as the most likely etiology for alleged dyspnea, with grated increase in exercise activities ordered (Exhibit 30F, page 36).

On July 1, 2021, the claimant underwent a medical consultative evaluation with Dylan Ekstrand, D.O., alleging disability due to chronic obstructive pulmonary disease, dyspnea with moderate activity, and use of two inhalers as needed (Exhibit 17F, page 14). The claimant also reported neck and low back pain, exacerbated by exertion (Exhibit 17F, page 14). Physical examination was notable for elevated blood pressure; a well-groomed appearance; the ability to get on and off the examination table unassisted without difficulty; clear lungs to auscultation bilaterally; normal joints without evidence of inflammation, swelling, or effusion; negative straight leg raise testing; 5/5 strength in the sternocleidomastoid and trapezius muscles; 5/5 strength in the upper and lower extremity with proximal and distal muscle groups; no limitation in cervical or lumbar spine range of motion as well as the upper and lower extremities; and normal fine fingering and 5/5 gross grip bilaterally (Exhibit 17F, pages 3-7, 15-16). Pulmonary function testing revealed normal findings (Exhibit 17F, pages 8-13). Dr. Ekstrand opined: the claimant should be able to walk for three to four hours out of an eight-hour day; could probably be on her feet for a combined total of three to four hours out of an eight-hour day; could probably carry less than 10 pounds frequently and more than 10 pounds on occasional; with other limitations in climbing, stooping, bending, crawling, kneeling, crouching, as well as lifting, carrying, pushing, and pulling (Exhibit 17F, page 16).

Chiropractic notes from May 2021 through July 2022, reflected chiropractic interventions for lumbar, cervical, and thoracic spine pain (Exhibits 24F; 28F).

The claimant established with pulmonology in March 2022 with pulmonary function testing ordered (Exhibit 29F, pages 5-9). Pulmonary function testing in April 2022 was notable for small airway obstructive disease with no change post-bronchodilator, air trapping, mild reduction in gas transfer, and may have some emphysema or/and is still smoking (Exhibit 29F, pages 10-13). Follow up in May 2022, noted the claimant's generally normal pulmonary function testing findings, with reported dyspnea on exertion, and discussion that the claimant had not been getting adequate exercise during the day as previously ordered (Exhibit 29F, page 2). The claimant was also noted as still smoking, albeit less than ½ pack per day (Exhibit 29F, page 2). The claimant counseled regarding Albuterol inhaler use as well as Mucinex for cough and advised to use nicotine patches and lozenges to assist in smoking cessation (Exhibit 29F, page 1).

Turning to the claimant's alleged mental impairments, the record reflected limited and wholly conservative treatment during the period at issue.

Notes on August 14, 2020, showed the claimant was starting Naltrexone to help

4

with alcohol cessation as well as attempting to get into an inpatient rehabilitation in the future, and endorsed stability in anxiety symptoms (Exhibit 9F, page 19).

Office visit notes on February 3, 2021, showed the claimant requesting modification to her depression medication regimen as she felt it was not working and was crying a lot (Exhibit 9F, page 7). Psychiatric examination was notable for the claimant being alert and oriented, cooperative, with appropriate mood and affect (Exhibit 9F, page 9). The claimant's Effexor dosage was increased with follow up advised (Exhibit 9F, pages 7-10). Follow up in March 2021, reflected the claimant feeling a little better on the higher dose of Effexor, as well as the claimant's attempting tobacco cessation with use of patches (Exhibit 9F, page 3). While possible increased or additional medication was discussed, it was noted that the telephonic visit was unable to be completed due to technical difficulties (Exhibit 9F, page 3). Notes in April 2021 showed the claimant reporting getting upset easily, which she associated with stopping smoking and drinking, but did not having had a couple of drinks the night prior due to trouble sleeping (Exhibit 14F, page 6). [sic] The claimant indicated however she wanted to leave her medications as is, with examination notable for appropriate mood and affect, and the claimant alert and oriented (Exhibit 14F, pages 6-9).

On July 13, 2021, the claimant underwent a psychological consultative evaluation with Kenneth Gruenfeld, Psy.D., alleging a history of depression and anxiety symptoms (Exhibit 18F, pages 1-3). The claimant reported use of marijuana on a daily basis to help her relax, eat, sleep, and feel less anxious, as well as drinking 1/5th of Vodka several times per week to help her sleep (Exhibit 18F, page 2). The claimant reported lack of focus, being quickly distracted, starting jobs, and not finishing, poor memory, lack of motivation, and panic attacks trigged by stress, pain, being alone, or large crowds (Exhibit 18F, page 3). Regarding her activities of daily living, the claimant indicated she wakes up and lies in bed all day watching television; can cook for her son; is able to shower several times per week; does not help with home chores consistently due to her mental health issues but knows how to cook, wash dishes and clothes, run a vacuum, and manage money and pay bills (Exhibit 18F, page 3). Mental status examination was notable for an alert presentation; an appropriate mood and affect; no nervousness during the evaluation; no symptoms of a psychotic condition; orientation to person, place, and time; exhibited good concentration evidenced by maintain good eye contact, answer examiner questions, and consistently remain on topic; and had no noted impairment with regard to insight and judgement (Exhibit 18F, pages 4-5).

(*Id*., PageID #: 59-62, Tr. at 32-35).

### C. Opinion Evidence

#### 1. Opinion evidence that the ALJ found persuasive or somewhat persuasive.

The State agency medical consultants initially (Mehr Siddiqui, M.D.) and upon

reconsideration (Dimitri Teague, MD) opined that Yost could occasionally lift and/or carry up to fifty pounds, frequently lift and/or carry up to twenty-five pounds, and was otherwise unlimited in her push and/or pulling in all extremities; stand and/or walk with normal breaks for six hours out of an eight-hour work day, sit (with normal breaks) for about six hours out of an eight hour work day, occasionally climb ladders, ropes, or scaffolds; avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and avoid all exposure to hazards including unprotected heights, commercial driving, and hazardous machinery. (ECF No. 7, PageID #: 114-15, 126-27, 137-38, 148-49; Ex. 2A, 4A, 6A, 8A).

The State agency psychological consultant initially (Jennifer Whatley, Ph.D) opined that Yost is able to understand and remember short and multi-step tasks; able to perform short and occasional multi-step tasks in a setting with flexible pace and production requirements; able to adapt to infrequent changes in routine; with changes to be introduced in advance of implementation. (*Id.*, PageID #: 115-16, 127-28; Ex. 2A, 4A). Dr. Whatley's opinion was affirmed upon reconsideration by Cindy Matyi, Ph.D (*id.*, PageID #: 135, 146; Ex. 6A, 8A), who further opined that Yost's condition restricts her capacity for detailed/complex tasks, but she is able to comprehend and remember simple instructions; able to carry out simple tasks, maintain attention, make simple decisions, and adequately adhere to a schedule; is able to maintain adequate workplace interactions; is able to adapt to infrequent changes in routine; with changes to be introduced in advance of implementation (*Id.*, PageID #: 138-39, 149-50; Ex. 6A, 8A)

### 2. Opinion Evidence at Issue

The ALJ summarized the physical health opinion by consultative examiner Dylan Ekstrand, M.D. (July 1, 2021):

> the claimant should be able to walk for three to four hours out of an eight-hour day; could probably be on her feet for a combined total of three to four hours out

> of an eight-hour day; could probably carry less than 10 pounds frequently and more than 10 pounds on occasional; with other limitations in climbing, stooping, bending, crawling, kneeling, crouching, as well as lifting, carrying, pushing, and pulling (Exhibit 17F, page 16)

(*Id.*, PageID #: 64, Tr. at 37).

The ALJ summarized the mental health opinion by consultative examiner Kenneth Gruenfeld, Psy.D. (July 13, 2021):

> Dr. Gruenfeld diagnosed major depressive disorder and generalized anxiety disorder and opined: task comprehension would not be an issue; the claimant would have problems with focus and motivation consistently carrying out future job tasks and working in a timely manner; will work slower than others due to her issues of focus and motivation and she will have problems completing multi-step job tasks and a combination of tasks that require multitasking; should be able to effectively work with others but will struggle during a panic attack; and stress will trigger her mental health issues and the quality and consistency of future task performance will worsen as stress heightens (Exhibit 18F, pages 5-6).

(*Id*., PageID #: 62, Tr. at 35).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. From the alleged onset date of July 31, 2019, through July 13, 2020, the claimant has the following medically determinable impairments: mild degenerative joint disease of the carpometacarpal joints in the bilateral thumbs; hip bursitis; osteopenia; osteoarthritis; hepatic steatosis/fatty liver; hypertension; gastroesophageal reflux disease; psoriasis/psoriatic arthritis; and insomnia (20 CFR 404.1521 et seq. and 416.921 et seq.).

5. As of July 14, 2020, the claimant has the following severe impairments: spinal dysfunction of the cervical, thoracic, and lumbar spine; mild degenerative disc disease and scoliosis of the lumbar spine; chronic obstructive pulmonary disease/emphysema; major depressive disorder; generalized anxiety disorder; and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: the claimant can occasionally climb ladders, ropes and scaffolds; must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; must avoid concentrated to extreme

cold, extreme heat, wetness and humidity; and avoid all exposure to hazards including unprotected heights, hazardous machinery, and commercial driving. Mentally, the claimant is able to understand and remember short and multi-step tasks; is able to perform short and occasional multi-step tasks in a setting with flexible pace and production requirements (no assembly line type settings); and is able to adapt to infrequent changes in routine, where changes are to be introduced in advance of implementation.

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

13. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.*, PageID #: 27, 28, 37, 38, 39, Tr. at 54, 55, 64, 65, 66).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

### 1. The ALJ properly applied the criteria of Social Security Ruling 96-8p and considered all of Claimant's impairments when forming the RFC.

In her first assignment of error, the Claimant argues that the ALJ erred by finding that her hip bursitis, osteoarthritis in her hands, hypertension, GERD, insomnia, and psoriasis are not "severe" (ECF No. 8 at 9), and that the error is not harmless because the ALJ failed to consider

any symptoms related to her hip problems and difficulties using her hands in determining her RFC as required by SSR 96-8p (*id.* at 11-12). The Commissioner notes that where an ALJ finds at least one severe impairment or combination of impairments and considers all impairments at the remaining steps of the evaluation process, " '[a]ny failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error and 'legally irrelevant.'" (ECF No. 11 at 11 (quoting *Garris v. Comm'r of Soc. Sec.*, No. 3:11 CV 2538, 2013 WL 3990754, at *7 (N.D. Ohio Aug. 2, 2013) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008))). Commissioner argues that the ALJ found that Yost had at least one severe impairment and considered Yost's osteoarthritis of the hands, hip bursitis, and psoriasis in forming the RFC, which is consistent with the opinions of the State agency physicians. This Court agrees with the Commissioner.

The ALJ found that Claimant had several non-severe impairments "including hip bursitis (Exhibits 20F; 26F); osteoarthritis (Exhibits 3F; 26F); hypertension (Exhibits 2F; 3F; 9F; 14F; 20F; 30F); gastroesophageal reflux disease (Exhibits 2F; 3F; 9F; 14F; 20F); [ ] insomnia (Exhibit 3F)"; and psoriasis. (*See* ECF No. 7, PageID #: 55-56, Tr. at 28-29).  The Court will not disturb that finding here. "In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)). However, the failure to find an impairment severe is harmless error where other impairments are deemed severe and the ALJ considers all the individual's impairments in the

10

remaining steps of the disability analysis. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found that Claimant suffered numerous severe impairments: "spinal dysfunction of the cervical, thoracic, and lumbar spine; mild degenerative disc disease and scoliosis of the lumbar spine; chronic obstructive pulmonary disease/emphysema; major depressive disorder; generalized anxiety disorder; and alcohol abuse[.]" (ECF No. 7, PageID #: 55, Tr. at 28). Therefore, Claimant "cleared step two of the analysis." *Anthony*, 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (*citing Maziarz*, 837 F.2d at 244).

Even if the ALJ erred by failing to list Claimant's impairments as severe, they considered the impairments when determining the RFC; thus, any error is harmless.

When determining the RFC, the ALJ must: "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5: *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e) (noting that the Commissioner will consider all of a claimant's medically determinable impairments, even if they are not severe). The policy statement further explains that "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*. Claimant argues that "[t]he ALJ continued through the Sequential Evaluation and failed to consider any symptoms related to her hip problems and difficulties using her hands" and that "[f]ailing to consider Plaintiff's bursitis and osteoarthritis when forming the RFC was

11

contrary to SSR 96-8p and necessitates a remand of this matter." (ECF No. 8 at 11, 12). The Commissioner responds by citing to the decision where the ALJ discussed Yost's non-severe impairments and arguing that the State agency reviewing physicians considered Yost's impairments including her osteoarthritis, psoriasis, and hip bursitis and opined that Yost could perform a limited range of medium work. The Commissioner notes that the ALJ found these medical assessments persuasive and incorporated the opined limitations into the RFC. (ECF No. 11 at 13). This Court finds that the ALJ's decision satisfies the requirements of SSR 96-8p.

The Sixth Circuit explained the requirements of SSR 96-8p in *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). Upholding the Commissioner's decision denying disability benefits, the Sixth Circuit emphasized that the ALJ conducted a detailed analysis of the claimant's non-severe impairments at Step Two. *Emard*, 953 F.3d at 848–49. And "[a]lthough the ALJ did not specifically discuss the combined effect of [the claimant's] impairments or mention [the claimant's] nonsevere impairments in assessing his residual functional capacity, [the ALJ] stated that she had carefully considered the entire record and 'all symptoms' at this step in the process." *Id*. at 851. Further, the court in *Emard* highlighted that "[d]istrict courts in this circuit have held an ALJ need not specifically discuss all nonsevere impairments in the [RFC] assessment *when the ALJ makes clear that her decision is controlled by SSR 96-8p*." *Id*. at 851–52 (emphasis added). As a result, the Sixth Circuit held that the ALJ's "express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis," plus her subsequent assurance that she had "considered the entire record and 'all symptoms,' " provided a sufficient basis to conclude that the ALJ properly considered all of the plaintiff's impairments when crafting the RFC. *Id*.

The identified factors from *Emard* are also present in the ALJ's decision in this case. In

their summary of the law, the ALJ specifically cited to SSR 96-8p and explained that prior to Step Four an ALJ must determine the individual's RFC by "consider[ing] all of the claimant's impairments, including impairments that are not severe[.]" (ECF No. 7, PageID #: 53, Tr. at 26 (citing 20 CFR 416.920(e) and 416.945; SSR 96-8p)). As in *Emard*, the ALJ here expressly "discuss[ed] [ ] the functional limitations imposed by [Plaintiff's] nonsevere impairments at step two of her analysis[:]"

> Review of the record also reveals treatment for non-severe impairments including hip bursitis (Exhibits 20F; 26F); osteoarthritis (Exhibits 3F; 26F); hypertension (Exhibits 2F; 3F; 9F; 14F; 20F; 30F); gastroesophageal reflux disease (Exhibits 2F; 3F; 9F; 14F; 20F); and insomnia (Exhibit 3F). However, *these impairments, considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment,* have not met the 12-month-durational requirement, or are otherwise not adequately supported by the medical evidence in the record. Accordingly, the undersigned finds that these impairments do not constitute severe medically determinable impairments (20 CFR 404.1545 and 416.945).

> Imaging of the claimant's bilateral hands in October 2021 revealed mild degenerative changes of the thumb CMC joints bilaterally and mild osteopenia (Exhibit 19F, pages 3-4). In April 2022, the claimant was advised to wear night splits for her numbness and tingling in her hands, consider injections, as well as a possible electromyographic evaluation (Exhibit 26F, page 18). *There is no indication that degenerative joint changes and mild osteopenia in the thumbs bilaterally caused anything more than transient and mild symptoms and no functional limitation, and therefore, the undersigned find these to be non-severe impairments.*

> Notes in May 2021 showed the claimant discussed the possibility of a gastrointestinal specialist referral for hepatic steatosis, in the context of continued heavy alcohol use (Exhibit 16F, page 7). Gastroenterology notes through December 2021 reflected medication management for her symptoms which included irritable bowel and bloating (Exhibit 25F). *This alleged impairment has caused only transient symptoms and limitations and are well controlled with treatment.* Accordingly, the undersigned finds these impairments do not constitute severe medically determinable impairments (20 CFR 404.1545 and 416.945).

> Dermatology notes in November 2020, showed the claimant treated with Otezla for psoriasis on the legs, scalp, and trunk, with improvement with medication, and worsening after having ceased her regimen (Exhibit 15F, page 2). Continued treatment with Otezla and Clobetasol shampoo was ordered (Exhibit 15F, page 3).

> In May 2021, the claimant was ordered to undergo injections with Taltz and discontinue Otezla as the prescription was denied by her insurance provider (Exhibit 15F, pages 6-7). The claimant established with rheumatology for evaluation of her alleged psoriatic arthritis in August 2021 (Exhibit 20F, page 9). While physical examination was largely unremarkable, the claimant was advised regarding injections for trochanteric bursitis of both hips and attempting to obtain authorization for Otezla (Exhibit 20F, page 11). Follow up in November 2021 showed 80% improvement in symptoms with Taltz injections but reports of headaches, with additional samples of Otezla provided and follow up with her rheumatologist (Exhibit 22F, pages 13-14). In January 2022, the claimant was provided injections to the hips as well as continued on Otezla, with notes of controlled psoriasis with the same (Exhibit 26F, pages 25-28). Interesting, rheumatology notes in January and April 2022 reflected that there was no evidence of psoriatic arthritis and that the claimant's symptoms were inconsistent with such a diagnosis (Exhibits 26F, pages 10, 18, 28). *Despite indications of occasionally symptomology, the claimant's condition appears to have improved with medication compliance as reflected above.* Accordingly, the undersigned finds these impairments do not constitute severe medically determinable impairments.

(*Id.*, PageID #: 55-6, Tr. at 28-9 (emphasis added)). In this analysis, the ALJ pointed to Claimant's non-severe impairments and cited to medical records showing that these impairments caused only mild symptoms and were well controlled with treatment. (*See id.*). The ALJ explained that the non-severe impairments did not impose additional limitations in Claimant's functional abilities. (*Id.*). The ALJ also specifically stated that they considered all of Claimant's impairments, including those determined to be non-severe, in assessing her RFC. (*Id.* ("The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.")). Although the ALJ did not again specifically discuss Claimant's non-severe impairments in their Step Four analysis, at the start of the RFC analysis, the ALJ stated that they had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*, PageID #: 59, Tr. at 32). It is well established in this Circuit that "an ALJ need not specifically discuss all nonsevere impairments

in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Emard*, 953 F.3d at 851-52.

Here, the ALJ discussed the functional limitations of Yost's non-severe impairments and expressly referenced that their decision was controlled by SSR 96-8p. Accordingly, Claimant's first issue is without merit.

### 2. The ALJ adequately explained the basis for finding Dr. Ekstrand and Dr. Gruenfeld's opinions unpersuasive and substantial evidence supports the ALJ's conclusion that Yost could perform work at the medium level of exertion with limitations.

Next, Yost argues that the ALJ's determination at Step Four is not supported by substantial evidence because they did not give more weight to Yost's examining medical sources. (ECF No. 8 at 13). Specifically, Yost challenges the weight given to Dr. Ekstrand's opinion (ECF No. 8 at 15) and the opinion of Dr. Gruenfeld (*id*. at 16). The Commissioner argues that the ALJ properly evaluated the opinion evidence under 20 C.F.R. § 404.1520c. (ECF No. 11 at 13-17). This Court finds that the ALJ adequately explained the basis for finding Dr. Ekstrand and Dr. Gruenfeld's opinions unpersuasive and that substantial evidence supports the ALJ's conclusion that Yost could perform work at the medium level of exertion with limitations.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling

weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

### a.  Dr. Ekstrand

On July 1, 2021, Yost underwent a medical consultative evaluation with Dr. Ekstrand, who provided an examination report. (ECF No. 7, PageID # 581, Tr. at Ex. 17F).  Dr. Ekstrand opined that Yost would be able to walk for three to four hours out of an eight-hour day; could probably be on her feet for a combined total of three to four hours out of an eight-hour day; could probably carry less than 10 pounds frequently and more than 10 pounds on occasional; with other limitations in climbing, stooping, bending, crawling, kneeling, crouching, as well as lifting, carrying, pushing, and pulling. (ECF No. 7, PageID #: 594, Tr. at Ex. 17F, page 16). The ALJ found this opinion unpersuasive "in light of both Dr. Ekstrand's generally unremarkable physical examination findings, and objective testing and treatment evidence during the period at issue which was largely unremarkable." (*Id.*, PageID #: 64, Tr. at 37). The ALJ also noted that there was "no objective support in the record" for the functional limitation opined by Dr.

16

Ekstrand. *Id.* The ALJ also explained that "the State agency medical consultant's findings [appeared] to be a more accurate representation of the claimant's functional abilities." *Id.*

Yost argues that the ALJ erred by not giving the opinion of Dr. Ekstrand—an examining physician—more weight than the opinion of a State agency reviewing physician because "20 C.F.R. § 404.1527 and 416.927 state that the ALJ is to generally give more weight to the medical source who has examined the Plaintiff." (ECF No. 8 at 14). Yost states that "[a]ccording to the relevant regulation, the ALJ should have given more weight to the opinion of Dr. Ekstrand." (ECF No. 8 at 15). The Commissioner argues that Yost "misunderstands the regulation" by citing to 20 C.F.R. § 404.1527 and 416.927. (ECF No. 11 at 14).

The Commissioner correctly notes that the regulations cited by Yost apply to claims filed prior to March 27, 2017. Yost filed her claims on March 2, 2021; thus, the relevant regulations are 20 C.F.R. § 404.1520c and 416.920c which specifically state that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." Accordingly, Yost's argument that the ALJ erred by not giving more weight to the opinion of an examining physician, as required by the regulations, is meritless.

Yost also argues that "[t]he ALJ's determination not to adopt [Dr. Ekstrand's] findings into the RFC was not supported by substantial evidence and was contrary to the consistent and supporting records". (ECF No. 8 at 15). The Commissioner argues that any attack on the ALJ's articulation of their evaluation of Dr. Ekstrand's opinion should be deemed waived as Yost merely addresses the issue in a perfunctory manner and fails to further develop the argument.

(ECF No. 11 at 15-16, n. 6 (citing *McPherson*, 125 F.3d at 995-96)).[1] The Commissioner also argues that Yost does not identify any error with the ALJ's evaluation of Dr. Ekstrand's opinion's and that her argument is merely an invitation for the Court to reweigh the evidence. (ECF No. 11 at 16). This Court agrees with the Commissioner.

The relevant regulations, 20 C.F.R. § 404.1520c(a) and 416.920c(a), specifically state that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." Instead of giving more weight to an examining physician, the ALJ must consider several factors and explain the persuasiveness determination based on the opinion's supportability and consistency. The ALJ did that here.

The ALJ explained that they found Dr. Ekstrand's opinion unpersuasive because it was neither supported by his examination report nor consistent with the medical record. Specifically, the ALJ stated:

> The undersigned has found this assessment unpersuasive in light of both Dr. Ekstrand's generally unremarkable physical examination findings, and objective testing and treatment evidence during the period at issue which was largely unremarkable. There is no objective support in the record for this level of functional limitation in contrast to the State agency medical consultant's findings which appear to be a more accurate representation of the claimant's functional abilities.

(ECF No. 7, PageID #: 64, Tr. at 37). This explanation addresses the opinion's supportability and consistency, thus complying with 20 C.F.R. § 404.1520c and 416.920c. In fact, Yost does not argue that the ALJ failed to articulate their consideration of the supportability and consistency

---

[1] The Court need not address the Commissioner's argument that Yost waived the articulation issue by addressing it in a perfunctory manner because, as discussed below, there is no indication that Yost attempted to raise this issue and, instead, merely disagrees with the ALJ's evaluation of Dr. Ekstrand's opinion.

factors as required by the regulations. Instead, Yost merely disagrees with the reasons the ALJ provided for not adopting Dr. Ekstrand's opinion. (*See* ECF No. 8 at 14-15).

Moreover, substantial evidence supports the ALJ's finding that Dr. Ekstrand's opinion was not consistent with nor supported by the record. Upon examination of Yost, Dr. Ekstrand noted no issues on Yost's muscle examination, 5/5 strength in Yost's upper and lower extremities, and stated she had "no limitations". (*Id.*). Dr. Ekstrand observed no issues with Yost's active muscle movements nor her gait and again noted that she had no limitations. (*Id.*, PageID #: 585). Pulmonary function testing revealed normal findings. (*Id.*, PageID #: 586-91). Dr. Ekstrand noted that Yost was able to get on and off the exam table without difficulty or assistance, that all major joints appeared normal without evidence of inflammation, swell, or effusion, and that her straight leg test was negative in the seated position bilaterally. (*Id.*, PageID #: 593). The whole of Dr. Ekstrand's observations of Yost and her test results were generally unremarkable and failed to support the functional limitations opined.

Additionally, the State agency reviewing physician's opinions support the ALJ's finding. The State agency reviewing physicians, initially and upon reconsideration, opined that Yost could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk for a total of six hours out of an eight hour workday; sit for about six hours out of an eight hour workday; occasionally climb ladders, ropes, or scaffolds; avoid even moderate exposure to fumes, odors dusts, gases, poor ventilation; and avoid all exposure to hazards such as machinery, heights, and commercial driving. (ECF No. 7, PageID #: 114-15, Tr. at 87-88; Ex. 2A, 4A, 6A, 8A). The ALJ found these opinions persuasive (*id.*, PageID #: 63, Tr. at 36) and Yost has not challenged the ALJ's assessment of the opinions. "Because state agency physicians are 'highly qualified physicians and psychologists who are also experts in Social Security

19

disability evaluation,' 20 C.F.R. §§ 404.1513a(b)(1), an ALJ may rely on their opinions as substantial evidence." *Meyer v. Comm'r of Soc. Sec.*, No. 3:20-cv01763-JJH, 2021 WL 7449308, at *9 (N.D. Ohio Nov. 29, 2021), *report and recommendation adopted*, No. 3:20-cv-1763, 2022 WL 743560 (N.D. Ohio Mar. 11, 2022).

Yost does not direct the Court to objective medical evidence that was not considered by the ALJ. Instead, Yost relies on her subjective complaints as evidence to support Dr. Ekstrand's opinion. (*See* ECF No. 8 at 14-15).  Yost's attack on the ALJ's opinion is asking the Court to reweigh the evidence in her favor. "But the Court does not reweigh evidence when reviewing an ALJ's determination." *McQuade v. Comm'r of Soc. Sec.*, No. 1:21CV834, 2022 WL 4375984, at *2 (N.D. Ohio Sept. 22, 2022); *Avers v. Kijakazi*, No. 3:20-CV-01433, 2021 WL 4291228, at *5 (N.D. Ohio Sept. 21, 2021) ("the court does not review the evidence de novo, make credibility determinations, or weigh the evidence (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989))).

Accordingly, substantial evidence supports the ALJ's finding that Dr. Ekstrand's opinion was not persuasive.

### b.  Dr. Gruenfeld

Dr. Gruenfeld performed a consultative examination on Yost on July 13, 2021. (ECF No. 7, PageID #: 595-600, Tr. at Ex. 18F). At the conclusion of the examination, Dr. Gruenfeld diagnosed Yost as having major depressive disorder and generalized anxiety disorder. (*Id*.). Dr. Gruenfeld opined that Yost would have no issue with task comprehension but would have problems with focus and motivation consistently carrying out future job tasks and working in a timely manner. (*Id*.). Dr. Gruenfeld opined that Yost would work slower than others due to her issues of focus and motivation; that she would have problems completing multi-step job tasks

and a combination of tasks that require multitasking; that she should be able to effectively work with others but will struggle during a panic attack; and that stress will trigger her mental health issues and the quality and consistency of future task performance will worsen as stress heightens. (*Id*.). The ALJ found this opinion unpersuasive and explained that they did so:

> in light of both Dr. Gruenfeld's generally unremarkable mental status examination findings, and objective testing and treatment evidence during the period at issue which was largely unremarkable. There is no objective support in the record for this level of functional limitation in contrast to the State agency psychological consultant's *initial findings* which appear to be a more accurate representation of the claimant's functional abilities.

(ECF No. 7, PageID #: 64, Tr. at 37) (emphasis added).

Yost asserts that the RFC was not supported by substantial evidence as it did not contain the limitations set forth by Dr. Gruenfeld. (ECF No. 8 at 13). The Commissioner argues that the mental RFC is supported by substantial evidence. (ECF No. 11 at 17).

As an initial matter, the premise of Yost's argument is incorrect. Yost incorrectly states that "the ALJ found that [Gruenfeld's] opinion was not persuasive as it was in contrast to the State Agency psychologists' reviews." (ECF No. 8 at 16). Yost is mistaken. The ALJ found that Gruenfeld's opinion was specifically in contrast to the *initial* state agency consultant's findings, which the ALJ found were a more accurate representation of Yost's functional abilities. (ECF No. 7, PageID #: 63-64, Tr. at 36-37 ("The undersigned has found these assessments somewhat persuasive as a whole, *with limitations initially assessed incorporated into the residual functional capacity*. As noted, *the initial finding* was affirmed, and *provides a more comprehensive function by function assessment of what the claimant could still do despite her impairments.* (emphasis added)). Thus, Yost's argument is incorrect as the ALJ did not base their reasoning on Gruenfeld's opinion being in contrast with the opinion of Dr. Matyi-- the second state agency psychologist.

21

Relying on this incorrect premise, Yost argues that because Dr. Matyi also opined that Yost was able to comprehend and remember only simple instructions, which is consistent with the opinion of Dr. Gruenfeld, the ALJ's failure to adopt the limitations of Dr. Gruenfeld is error. The Commissioner correctly argues that an ALJ is not required to include all opined limitations even when finding an opinion persuasive. (*See* ECF No. 11 at 17 ("An ALJ 'is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding'") (quoting *Reeves,* 618 F. App'x at 275; *see also Poe v. Comm'r of Soc. Sec*., 342 F. App'x 149, 157 (6th Cir. 2009))). Moreover, "an ALJ who finds the prior administrative medical findings somewhat persuasive but omits some of the limitations from the RFC need not 'explain the reasons for doing so.'" (*Id*. at 17-18 (quoting *Selzer v. Comm'r of Soc. Sec*., 1:16 CV 276, 2016 WL 11264703, at *4 (N.D. Ohio Dec. 20, 2016); *see also Winfield v. Comm'r of Soc. Sec. Admin*., No. 1:18-CV-01635, 2019 WL 3619403, at *12 (N.D. Ohio July 16, 2019))). Nonetheless, the ALJ here explained their reasons for not including the greater limitations opined by Dr. Matyi and Dr. Gruenfeld. The ALJ contrasted the two State agency opinions and explained that "the initial finding [from Dr. Whatley]. . . provides a more comprehensive function by function assessment of what the claimant could still do despite her impairments[.]" (*Id*., PageID #: 64, Tr. at 37). And, as explained above, the ALJ adequately explained that Dr. Gruenfeld's generally unremarkable mental status examination findings did not support his opinion for greater limitations and that the objective record, including Yost's testing and treatments, was not consistent with his opined greater limitations. (ECF No. 7, PageID #: 64, Tr. at 37).

Here, substantial evidence supports the ALJ's mental limitations included in the RFC. On August 6, 2021, State agency reviewing psychologist Dr. Jennifer Whatley reviewed Yost's

medical records, including those from Dr. Gruenfeld, and opined that Yost is able to understand and remember short and multi-step tasks, perform short and occasional multi-step tasks in a setting with flexible pace and production requirements, and adapt to infrequent changes in routine when those changes are introduced in advance of their implementation. (ECF No. 7, PageID #: 115-16, Tr. at Ex. 2A). The RFC included Dr. Whatley's opined mental limitations. (*Id.*, PageID #: 59, Tr. at 32 ("Mentally, the claimant is able to understand and remember short and multi-step tasks; is able to perform short and occasional multi-step tasks in a setting with flexible pace and production requirements (no assembly line type settings); and is able to adapt to infrequent changes in routine, where changes are to be introduced in advance of implementation.")). Yost does not allege any error with the ALJ's evaluation of Dr. Whatley's assessment. Accordingly, Dr. Whatley's uncontested opinion constitutes substantial evidence supporting the mental limitations set forth in the RFC. *Meyer*, 2021 WL 7449308, at *9.

### 3. The ALJ properly applied SSR 16-3p when they considered Yost's complaints of pain in the RFC determination.

In her final assignment of error, Yost argues that the ALJ improperly applied SSR 16-3p when they failed to consider her pain as precluding her from engaging in substantial gainful activity at the medium level of exertion on a sustained and full-time basis. (ECF No. 8 at 19). The Commissioner argues that the ALJ complied with SSR 16-3p by providing an adequate explanation for their determination that Yost's complaints of disabling pain were not entirely consistent with the evidence and this Court should defer to that assessment. (ECF No. 11 at 18-19). The evaluation of claimants' subjective complaints rests with the ALJ.  *See Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ").  In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other

information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-7 (2017).

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.* at *8. SSR 16-3p sets forth seven factors that the ALJ should consider in this evaluation: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) other treatment for relief of pain and other symptoms; (6) any additional measures to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.*, 2017 WL 5180304, at *7-8. The ALJ need not analyze all seven factors but should show that they considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

"An ALJ's determination of subjective evidence receives great deference on review." *Jones v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-01257-DAC, 2022 WL 3155823, at *16

(N.D. Ohio Aug. 8, 2022). "Absent compelling reason, this Court may not disturb the ALJ's analysis of the claimant's subjective complaints or the conclusions drawn from them." *Id.*, 2022 WL 3155823 at *16. Although a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

The ALJ summarized Yost's subjective complaints:

The claimant reported being unable to engage in work activity due to a combination of her physical and mental conditions (Exhibit 2E). The claimant testified that she is unable to work due to an ability to stand or walk for too long, hand and arm difficulties, lower back and hip pain, pain in her neck and shoulders, and right leg and feet pain. The claimant indicated she has aches and pains in her hands associated with arthritis, experiences hand cramping, and has pain when she bends her elbows. She reported itching and joint pain related to psoriasis and endorsed some headache side effects from prior medication but none currently on Otezla. She stated she has difficulty with sleep due to tossing and turning. The claimant indicated she attends chiropractic therapy, attended two sessions of physical therapy, does home exercises, and has had a history of injections in her hips. The claimant specified she experiences improvement for three to four months with her injections and temporary relief for a day or two with her chiropractic therapy. The claimant reported she has two inhalers and a breathing machine for her respiratory issues and is unable to be outdoors when it is hot due to breathing problems. The claimant noted that she is also treated for anxiety and depression, in the form of medication management, which she noted helps her conditions.

The claimant testified that she lived with her son's father and her 12-year-old son, maintains a driver's license, and has pain with driving, receives medical assistance, and noted being able to work part time during the period at issue. The claimant indicated she can shower and dress, uses a shower chair, and occasionally needs to rest before getting dressed. The claimant stated she takes longer to prepare food due to shortness of breath and hand cramps, is able to shop albeit quickly going in and coming out. During a typical day, the claimant noted she sleeps most of the time, will feed her son, can drive herself to appointments, is able to drive her son to extracurricular functions when he engages in such activities, but otherwise lays around a lot. The claimant indicated she can stand for 10-20 minutes before having to sit down, can sit for approximately 20-30

minutes, and can lift 20-30 pounds comfortably but not continuously. She reported difficulty with getting up from kneeling, uses a non-prescribed cane when she is out for an extended period.

(ECF No. 7, PageID #: 59-60, Tr. at 32-33). The ALJ stated that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*, PageID #: 62, Tr. at 35). The ALJ explained their conclusion by citing to the "limited and conservative treatment regarding both the claimant's musculoskeletal complaints and respiratory issues." (*Id.*). Throughout the decision, the ALJ acknowledged Yost's complaints of pain and difficulties performing activities of living. (*Id.*, PageID #: 55, 59-61, 63, Tr. at 28, 32-34, 36). After detailing Yost's treatment for her impairments (*id.*, PageID #: 60-61, Tr. at 33-34), the ALJ stated that symptoms of Yost's musculoskeletal complaints and respiratory issues:

> were responsive to conservative interventions including medication management, lifestyle changes, and increased physical activity. Despite alleged respiratory conditions, the claimant ubiquitously smoked, both tobacco and marijuana (per claimant's report) with only limited if any findings reflected during objective pulmonary function testing. As for the claimant's spine related symptoms, physical examination findings of record were largely unremarkable, with no indication of any need for inpatient, emergency, or surgical interventions for any alleged condition. While the claimant reported use of an assistive device for ambulation, there is no support for medical necessity for any such device. Indeed, the record shows the claimant maintained independence with activities of daily living, was able to work during the period, and was able to provide care for her child supporting greater functional ability than otherwise alleged.

(*Id.*, PageID #: 62, Tr. at 35). The ALJ then concluded that Yost's subjective complaints were inconsistent with the treatment evidence in the record. (*Id.*).  Here, the ALJ adequately explained their conclusion by discussing Yost's daily activities; her conservative treatments including

medication management, lifestyle change, increased physical activity; continued smoking of tobacco and marijuana; and largely unremarkable physical examination findings. Accordingly, the Court finds that the ALJ satisfied the requirements of SSR 16-3p.

Yost argues that the ALJ's conclusion was not supported by the record. (ECF No. 8 at 22). In support of this argument, Yost cites to various medical records demonstrating her subjective complaints and diagnoses. (*Id.* at 19 ("Plaintiff regularly complained of pain to her treating providers (Tr. 330-332, 333, 336, 339-342, 436, 440, 442, 449, 496, 498, 548, 716, 722, 726, 735, 737, 763-765, 890). The medical evidence established that Plaintiff had an objective diagnosis for her complaints regarding disabling pain, her bilateral hip bursitis."). The ALJ's decision demonstrates that they considered the medical records cited by Yost; and Yost does not argue otherwise. Yost does not argue that the ALJ failed to consider facts or that the facts the ALJ relied upon were inaccurate. Instead, Yost argues that "[i]t is clear that the evidence in this matter established that Plaintiff satisfied the criteria set forth in Ruling 16-3p." (*Id.* at 21). As such, Yost's argument merely asks this Court to reweigh the evidence. However, it is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

Here, substantial evidence supports the ALJ's conclusion that Yost is able to perform medium work with additional limitations. In addition to the ALJ's explanation of Yost's conservative treatments, generally unremarkable findings on physical examination, and abilities to perform daily activities, the prior administrative findings support the ALJ's conclusion. The State agency reviewing physicians opined initially and upon reconsideration that Yost could perform a reduced range of medium exertion work. (*See* Tr. at Ex. 2A, 4A, 6A, 8A). Specifically, the State agency reviewing physicians opined that Yost could occasionally lift and/or carry up to

fifty pounds, frequently lift and/or carry up to twenty-five pounds, and was otherwise unlimited in her push and/or pulling in all extremities; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight hour workday; occasionally climb ladders, ropes, or scaffolds; avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and avoid all exposure to hazards including unprotected heights, commercial driving, and hazardous machinery. (ECF No. 7, Tr. at Ex. 2A, 4A, 6A, 8A)); *see also* 20 C.F.R. § 404.1567(c) & 20 C.F.R. § 416.967(c) ("The physical requirements for medium work involve "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."); SSR 83-10 ("A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."). The ALJ found these opinions persuasive and included their limitations in the RFC. (ECF No. 7, PageID #: 59, Tr. at 32 ("claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: the claimant can occasionally climb ladders, ropes and scaffolds; must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; must avoid concentrated to extreme cold, extreme heat, wetness and humidity; and avoid all exposure to hazards including unprotected heights, hazardous machinery, and commercial driving")). It is well-established that "State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence[.]" *Hoskins v. Comm'r of Soc. Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004). Yost has not challenged the ALJ's evaluation of the State agency reviewing physicians' opinions. Therefore, substantial evidence supports the ALJ's finding that Yost can perform work at a medium exertional level with additional limitations.

Accordingly, Yost's third issue is without merit.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 26, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).